UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Ker
FILE

JUL 1 9 2006

AT LON.
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-470-GWU

PEGGY S. MCCLURE,

PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

McClure

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

McClure

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

McClure

pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

McClure

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

McClure

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Peggy S. McClure, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cervical and lumbar disc disease and obesity. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. McClure retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to a range of sedentary and light work at simple, repetitive, low stress jobs with infrequent, brief, and casual public contact, no worse than a "moderate" limitation of basic mental work activities, the option of sitting or standing at no more than 30 minute intervals, with frequent position changes allowed but no use of foot controls or pedal activity, and, following the restrictions of Dr. James Templin, she would be unable to engage in activities requiring frequent bending, stooping, kneeling, crouching, lifting, carrying, climbing, or riding in vibratory vehicles for extended distances or time, and should avoid or minimize activities requiring extensive or repetitive use of the arms for pushing, pulling, lifting, twisting, turning,

7

grasping, holding, carrying, or activities above shoulder level. (Tr. 395-6). She would also need to avoid lifting items weighing greater than 20 pounds from waist level or carrying the weight for any extended distances or time, and would need to avoid lifting items weighing greater than 10 pounds from floor level or doing any repetitive lifting from floor level. (Tr. 396). The VE responded that she interpreted the lifting restrictions as limiting the individual to "sedentary" range occupations because they were somewhat unclear. She proceeded to identify jobs that could be performed in response to the hypothetical question, and gave the numbers in which they existed in the state and national economies. (Tr. 397-9).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. McClure alleged disability due to chronic low back and cervical pain. (Tr. 70). At the hearing before the ALJ, she also described pain in her hip, frequent migraine headaches, left knee pain, and difficulty sleeping. (Tr. 383-6, 391). She felt she could pick up a gallon of milk, but could not sit for more than 30 minutes without a change of position or stand for more than one hour. (Tr. 388-9). She did do some household chores such as vacuuming and laundry. (Tr. 390, 392). She was being treated for high blood pressure and had extra medication to take when it went up. (Tr. 392).

8

Medical records in the transcript related to the plaintiff's alleged disabling conditions include an evaluation by Dr. William Brooks, a neurosurgeon, in July, 2001. Mrs. McClure stated that she had not been able to work due to cervical, left arm, and low back pain after lifting a patient in her health-care job in February. (Tr. 93). Dr. Brooks' examination showed a cervical spine range of motion at least 80 percent of normal, negative straight leg raising, and only a slight loss of sensation of the left arm and of the legs, despite the patient's assertion of radiating pain to these areas. (Id.). He obtained an MRI of the cervical spine which showed only a "tiny" spur at C6-7 with no focal disc extrusion, a lumbosacral spine MRI which showed only mild degenerative disc disease, and a normal EMG/NCV of the left arm. (Tr. 95-7). On a follow-up visit, Dr. Brooks described MRIs as essentially normal and establishing a diagnosis of musculoligamentous strain. (Tr. 92). As surgical intervention was not warranted, he released the plaintiff from his care. No functional restrictions were given.

Dr. James Templin conducted a consultative examination of the plaintiff in January, 2003, and reviewed many office notes from the plaintiff's previous treatment as well as the MRIs and EMG/NCV obtained by Dr. Brooks. (Tr. 184-5, 192). His examination showed that Mrs. McClure was obese and had elevated blood pressure, but her funduscopic examination was benign. (Tr. 187). There was tenderness over the cervical spine, which had a reduced range of motion, and there was increased pain in each arm with abduction and adduction against resistance.

9

(Id.). Forward flexion of the lumbar spine was no more than 41 degrees, and straight leg raising was positive, but reflexes and sensation were normal. (Id.). There was a reduced range of motion of the hips. Dr. Templin listed the restrictions given by the ALJ in the hypothetical question to the VE, supra. (Tr. 189).

State agency physicians who subsequently reviewed the record opined that the plaintiff could perform medium level exertion with fewer non-exertional restrictions than Dr. Templin. (Tr. 245-54, 329-36). The VE testified that the jobs she had described could also be performed under these sets of restrictions. (Tr. 399).

Subsequently, the plaintiff submitted office notes from an orthopedist, Dr. Thomas Cervoni, reflecting treatment between October, 2003 and April, 2004. Initially, his treatment was for right hip and back pain, although the plaintiff also began complaining of patellar pain in the left knee. Dr. Cervoni obtained more testing, including normal x-rays of the right hip and lumbosacral spine (Tr. 354), an MRI of the lumbosacral spine showing only a small disc bulge and no disc herniation or nerve impingement (Tr. 352), for which he recommended physical therapy and conditioning, a negative rheumatoid arthritis factor test, and left knee x-rays showing patellofemoral joint narrowing (Tr. 349). An EMG of the lower extremities was normal (Tr. 343-4), as was a MRI of the right hip (Tr. 341-2). By April, 2004, Mrs. McClure informed Dr. Cervoni that her knee symptoms had improved, although her back pain continued to radiate to the right hip. (Tr. 339). On examination, she was

10

McClure

ambulating with no limp, in contrast to previous examinations, but her back flexibility continued to be limited in all directions. (Id.). Dr. Cervoni discussed the possibility of a functional capacity evaluation "to obtain some objective measures of her capability to handle" the physical demands of her work as a nurse's aide (Id.), but apparently this was not obtained. Dr. Cervoni did not give an opinion regarding functional capacity.

The plaintiff also submitted some office notes from her family physician, Dr. Jon Anthony Arvin, as well as a residual functional capacity assessment by the physician which would apparently limit her to less than full-time sitting, standing, and walking, although some of the restrictions given are contradictory. (Tr. 355). However, the ALJ rejected this assessment on the reasonable grounds that Dr. Arvin specifically stated the limitations were obtained from "patient history." (Id.). Dr. Arvin's office notes do not support extreme limitations, with his recent note of May 4, 2004 stating that the plaintiff had a "previous" back problem which was "actually better." (Tr. 357). The previous fall, he had noted that his examination of her right hip was normal, as was an x-ray, and a lumbosacral spine x-ray showed only "mild" degenerative disc disease. (Tr. 360, 363).

Substantial evidence supports the ALJ's refusal to accept Dr. Arvin's functional capacity assessment for the reasons given above. The ALJ accepted Dr. Templin's limitations, and there is no evidence of greater restriction.

11

McClure

The plaintiff argues on appeal that the ALJ failed to give proper consideration to her combination of impairments, but the ALJ's decision contains an extensive discussion of her various ailments, and it would be unreasonable to require greater articulation. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). The plaintiff also argues that the ALJ did not properly consider her allegations of pain, but a review of the ALJ's decision shows that the discussion was adequate in this regard. (Tr. 16-18). See Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853-3 (6th Cir. 1986).

The decision will be affirmed.

This the ___19___ day of July, 2006.

G. WIX UNTHANK
SENIOR JUDGE